not the case. The legal issues in this case can be summarized in two broad questions, a who question and a how question. Who can settle FLSA claims and how may they be settled? Who can settle? Can FLSA claims be settled on a representative basis by the named plaintiff in an opt-out class action? Our reading of section 216's opt-in requirement is that they cannot. This court will be the first federal court of appeals to decide that issue. How was Lofton settled? Does it satisfy due process to apply Lofton to bar FLS claims in this case? There are troubling fact issues about the Lofton proceeding. Now, the fact issues about problems in Lofton make this case different from the Witnicki case that Judge Costa decided in 2014, but there's also a difference, I think, in how the legal issues were presented in that case, plus some interim developments, such as last year's Bodle case, which Judge Smith was on that panel, and the Supreme Court's Tyson Foods decision earlier this year. We're asking the court to focus especially on what the FLSA's opt-in party plaintiff requirement means for the identity of parties element of res judicata. So I'd like first to address that who question and then talk about the how issues that distinguished the Lofton case from the settlement issue in the Witnicki case. Section 216's opt-in requirement means that an opt-out class action cannot settle FLSA claims. Our res judicata argument comes down primarily, essentially, to the identity of parties element of res judicata. Congress says that the only way for an employee to join FLSA litigation is to execute a written consent that gets filed in the court. That didn't happen in Lofton, so the California plaintiffs were not parties to an FLSA action. For the class reps in the California litigation, you agree they're bound by res judicata? I think Ms. Lofton, who was the one and only class rep in Lofton, would probably be bound by res judicata. She is not one of our plaintiffs. But 29 U.S.C. section 216B is the exclusive means for privately enforcing FLSA violations. This court and other courts have consistently found that the plain language of 216 means that you can't litigate FLSA claims through an opt-out class action. The most relevant language is the sentence, no employee shall be a party plaintiff to is filed in the court in which such action is brought. Are you saying by that that the action could not have been brought as part of the California litigation under either the California res judicata test or the federal res judicata test? Your Honor, to unpack that a little bit, I think there's a difference in how the action can be brought and what you can do for res judicata when you're looking at the prior action. It could have been brought in California on an opt-in basis. You could have done, they could have done this as a hybrid action, where you have state claims which can proceed on an opt-out basis, but you could have done an opt-in track for  that. Well, but the test is whether it, I mean, that's always been the test for res judicata, at least under the federal test, whether it could have been brought. Your Honor, I think in a, substantively, these claims could have been brought in that they were based on the same underlying facts and there's plenty of jurisdiction in California courts to do FLSA. The FLSA says that. But on the res judicata end, what you look at is, are the elements of res judicata satisfied? And could have been brought, that's satisfied. But the question here . . . If they had been brought in this procedural context, the class members would have had to opt in and become actual parties to pursue FLSA claims in state court, no, or . . . No, that's right, that's right, Your Honor, and that's why we say this goes to the identity of parties element of res judicata. So we'd admit, you know, could have been brought on the same underlying facts, they're part of the same transaction, sure. Is there a, well, there's a question in this case about whether the judgment has sufficient finality, but say it's final, is there a final judgment? Sure. The question is, can you bind these parties for FLSA claims when Congress says you can only join as an FLSA party plaintiff by the opt-in written consent? Congress added that language, put that language, amended 216 in 1947. And then ever since 1966, when modern Rule 23 was adopted, plaintiffs began trying to aggregate their FLSA claims through opt-out class actions. And this Court and other courts have consistently said that this can't be done. In 1975, this Court had one of the leading decisions on this in the La Chapelle case and said it very plainly. Rule 23C provides for opt-out class actions, FLSA section 16B allows as class members only those who opt in. These two types of class actions are mutually exclusive and irreconcilable. In 2008, this Court reiterated that in Sandoz v. Singular Wireless. This past April, the Supreme Court's majority opinion in the Tyson Foods case confirms that all sitting justices hold that same view of section 216. To get there, you have to combine, you have to add up the judges who joined Justice Kennedy in Tyson Foods with the ones who joined Justice Thomas in Genesis Healthcare. In our reply brief, we walk through that. But they all agree on this view of 216. Lofton was a purely opt-out class action. It was not done as one of these hybrid actions where you have a separate opt-out and opt-in contract. So just— Justice Kennedy, speaking, how would this work? I mean, it does seem it makes it difficult to get finality or even settlement in these cases. If you can bring a state class action, enter into a settlement agreement that purportedly waives the federal claims, but then if we're not going to recognize that, all these people could then opt into a class action asserting, or a collective action asserting FLSA claims. If that's the case, but would they then get, any amounts get credited against what they were paid under the state claims? I would think that would be the case, and that would, that should be done as an offset as a question of damages law and the rule against double recovery. One thing you don't get in some of these state claims, including the California claims, is liquidated damages, the same way you do under the FLSA. FLSA gives, for these overtime claims that are at issue in these two cases, liquidated damages basically doubles the amount of compensation due. You can't get that in California. In the Lofton case, they couldn't claim that in the California case under California state law. But you can get finality, so there's finality in the sense, though, that you could apply an offset when you get to damages. There's finality is available in the sense that you can do a settlement on an opt-in basis for FLSA, and maybe not everybody opts into that, but the ones that do, you have finality. There's also a built-in finality in that the FLSA, the statute of limitations, up to three years is the maximum for FLSA statute of limitations. And unlike a Rule 23 class action, the statute of limitations clock does not stop when the class is certified. When conditional certification, as it's called in FLSA collective actions, goes out, it doesn't stop the statute of limitations. So like, for example, all the other Lofton plaintiffs, other than the 1,500 or so people that have joined our action, they're all barred now by statute of limitations regardless. So there's already finality as to those people. But there's, there are several of these, since about the mid-2000s, there have been several of these hybrid actions. And a good overview of this hybrid action issue can be found in one of the cases that was done out of the Third Circuit. And Knepper, in that case, was talking about whether, the issue early on was whether these hybrid actions could proceed, and in those cases, in the early cases, the employers tended to argue, one thing they wanted to argue was that the FLSA 216 preempted allowing state claims to go on an opt-out Rule 23 basis. And the courts have pretty consistently said, it doesn't preempt that. If the state is fine with you pursuing it as an opt-out class action, you may do that. And you may also do a hybrid action where you do them in parallel, but the state claims can be opt-out, but the FLSA, you've got to do opt-in. And an employee who does not opt-in to the federal class would receive only the relief that is prescribed under the law governing her part of the case. So for example, with the liquidated damages, say you have a plaintiff who didn't opt-out of the state claim, did not opt-in to the FLSA claim, in that situation, she wouldn't get the liquidated damages under the FLSA. Would you consider, I mean, the way these cases work, this is a classification case, isn't it? The underlying broker case? Yes. About how they were classified as exempt or covered under the case. So you think you're owed $50,000 in wages. And the way these cases always work out in settlement, because there's uncertainty as to whether they're actually exempt or not, that $50,000 wage claim gets settled for $5,000, and the case is over. So if that happens in a state class action, it's settled for 10 cents on the dollar of what was claimed, they'd then be able to go back in a federal collective action and get the other 90 cents. Is that it? Yes. Yes. Well, why would they ever be settled? I mean, what does that do to the? Well, I mean, these hybrid actions are settled frequently. At page 64 of our opening brief, we cite a number of the cases. And, you know, and most of these cases, you know, frankly, most of these cases, the amount in dispute for an individual plaintiff is not that much. So if you settle a hybrid action and the opt-out people who stay in the class receive a payment for their state law claims, and the ones who opt in, maybe they receive a little extra for the FLSA, it's highly unlikely, as a practical matter, that many of the ones who didn't opt in to the FLSA are going to continue on and try to get more on the FLSA. It's not that common. And our case, in particular, is an unusually large collective action. You know, most of these, like, example, the one that was at issue in the Lipnicki case, the affected plaintiffs were only 15 people from that California class action. So I think the calculus that people probably do is you do the opt-out settlement, you do the opt-in component, and probably, as a practical matter, you just assume you're probably not going to have to deal with this very much. And as I say again, statute of limitations will cut off people who don't opt in. And you know, I don't know, I have 48 seconds left, but unless the Court has anything else, I'll wrap up. You say you're full time forever. Thank you very much. Order. Good morning, Lindbergh Porter on behalf of Wells Fargo Bank. I thank the panel for the opportunity to argue here in the Fifth Circuit. I come from a couple hundred miles up the road, and it's a great honor to be here for the first time in this Court. So thank you. The discussion that just ensued seems to have been an academic one. This is not a hybrid action. This is an action brought by plaintiffs' counsel under California law. The complaint lists six or seven causes of action under California law. It says on its face that this is an action for class action under California Rule 382, which is the equivalent of Rule 23 under federal rules of civil procedure. It included one cause of action under California law. It's omnibus unfair competition law, which relies on an alleged unlawful practice from any jurisdiction, from any law in California, state, federal, local, that is alleged to have been violated. And the plaintiffs say that the home mortgage consultants didn't get overtime. That is a violation of the Fair Labor Standards Act. And they use that as a predicate act because you can get additional damages and additional statute of limitations under California law. But this is not an action that is pursued under the remedies and the remedial scheme and the litigation scheme under the FLSA. This is an action where, as the Court has pointed out, home mortgage consultants were classified as exempt from overtime and minimum wage under California law. And they claim that they should not have been and should have been eligible for overtime. That's a gravamen of this case. Regardless of the theory that's being asserted, that's what was settled. And it settled all claims that, and all theories that could have arisen under that theory. Mr. Porter, let me ask, the state court judgment here you're trying to give preclusive effect to actually had language waiving or releasing FLSA claims. Yes, Your Honor. If these parties had just settled the state class action, but there was no release of FLSA claims mentioned in the judgment or settlement, would you still be arguing it would have preclusive effect on federal claims? I would. The language of the release, which is before the Court, it says all claims, state or federal, growing out of these, this event, these transactions, this alleged misclassification. And then it says, including FLSA and other claims. So the release was broad. Race judicata applies to claims that were or could have been litigated. So even without the including FLSA, you'd be taking the same position? I would take the same position, and I believe that's consistent with the rulings of this  I know that it's consistent with the Matsushita, for example, where the federal claims were released and not mentioned. And in Matsushita, the court, the U.S. Supreme Court case, the court will remember that the state court didn't even have potential jurisdiction over the federal claims. Here the state court had jurisdiction under the FLSA of potentially, had the competence to adjudicate FLSA claims. It didn't adjudicate these claims, I want to make that very clear. It approved a settlement that included and extinguished all claims, including those that could have been brought under the FLSA. That's what the court-approved settlement agreement said. That is what the court-approved notice to every class member said. And that is what the class members signed off on, including the 1,500 who are members of this group that are here today. They all, including these, participated in that settlement. 1,300 of the 1,500 here received payments totaling just under $5 million from that resolution. And they've not offered to return it, by the way, which is one of the requirements to set this aside. Section 216 does not mandate an exception to the general race judicata rules. It never has. There's no court that has found so, with the exception of the Donati decision out of Missouri, which in the Lipnicki case was thoroughly reviewed and analyzed. It was also reviewed and analyzed by Judge Miller in the district court, finding that it was poorly decided or not fully analyzed and discussed in that case. I'd like to hear people rolling on my district court cases. They don't get read too much. But when I decided that, a big part of my reasoning was that I read the Fifth Circuit as moving away from this notion that FLSA claims are special in requiring court supervision over all settlements. Since Lipnicki, the Fifth Circuit, as I think opposing counsel pointed out, decided this bottle case last year, which rejected the non-compete case and there was just a broad release and the district court had said that precluded a later FLSA claim, but our court reversed saying that a broad release didn't qualify given that the FLSA requires basically court approval and more specific language for FLSA settlements. So is that a change? I mean, put another way, was I wrong in reading the Fifth Circuit law given that subsequent decision? As the court knows, we argue in our brief that the Lipnicki case was decided exactly right and that that case should control this one and so forth, the analysis of that issue. But with respect to Bodle, two points. If I recall correctly, Bodle sought approval of private action. This is a court-approved settlement, it's a court-approved notice, and no one opted out. Second, the issue of race judicata, the Full Faith and Credit Act and the Full Faith and Credit Clause of the United States Constitution, where we had a state court in California fully analyzing all of the issues here more than once and issuing a judgment that is a final judgment, race judicata, full faith and credit under the statute and under the Constitution apply. That was not the case there. So we are asking the court to accept the finality of the judgment under race judicata standards coming out of California. I think the court is bound to do that and I think Bodle is certainly distinguishable on that point. Race judicata, of course, is the standard that we are arguing here and it doesn't matter what plaintiff's legal theory is. Plaintiff is simply trying to split his claims and to recover twice and you cannot do that under notions of race judicata and that is undoubtedly the case. Well, Mr. Ward, at least as I heard him, acknowledged that the FLSA action could have been brought, to use the language of the California standard. Yes, Your Honor, I think he did concede that it could have been. So that sweeps then under race judicata equally strongly. It seems to me that that argument cuts for Wells Fargo rather than against Wells Fargo to the extent that it could have been. The only distinction that is in the FLSA cases, that is the argument is that it could not have been preceded as a collective action and I want to emphasize again, this was not a collective action. This was a class action where everyone was bound who did not otherwise opt out. The claim, the extension of it is you can participate or not participate. You can win, lose, you can take money or not take money and still pursue an FLSA claim after the conclusion of your full participation in the class action. That cannot be the law for any number of reasons. If it were, then it's impossible to settle any of these cases as the Court has suggested anywhere, anytime and there are hundreds of these cases that are settled every year that are inclusive of the broad relief for wage and hour claims that are present in this action. Do you need to rely on race judicata? Why isn't there just a pure contract law release given the settlement? Is it because these class members aren't each signing an agreement or why wouldn't just a release argument work? Well, I think we do. I think we have the settlement agreement which is a release standing apart. We have the notice and we have the claim. So I agree with the Court entirely. Any one of those theories would have resulted in a release and waive of the claims and with respect to the who's a party, this Court and all the other courts are clear. It's the opportunity to participate, to receive notice of what is being adjudicated, what rights are being compromised and what rights are at issue in the lawsuit. There's no claim here that all of these 1,500 and the other 6,500 in California did not receive notice. A Court approved notice that explicitly laid out what was being released in this claim and an opportunity to opt out. Not a single one of them opted out or objected and so they are bound by their agreement because under the law of this, of the Fifth Circuit and the State of California, they are parties to the action. I want to come back just a moment with respect to the Matuchita case where the Court was not able to release the government in a securities case because I think the U.S. Supreme Court has spoken on this as well. The federal claims had not been asserted in the state case and in fact could not have been asserted in the state case because the Securities and Exchange Act, unlike the FLSA, gave exclusive jurisdiction to the federal courts. The U.S. Supreme Court upheld the release of the federal claims, holding that federal law, barring the state claim from hearing the federal claims, did not undermine the grant, a full release of all related claims. That's precisely what we have here, a full release of all related claims. And so I think the Lipnicki case, the Conkle case, which we have discussed, the Matsuchita case, all stand for the proposition that the release alone was enough. The notice approved by the court conveyed standing so far as party plaintiff, and that issue goes away. Consequently, the release and the judgment must stand in the face of the Full Faith and Credit Act. Section 216 does not create any exception to it under the Full Faith and Credit Act at all. It didn't preempt or displace that. So the judgment stands. A couple of other instances where cases were cited, both the Gonzales case and the later Kemp and Hunter cases, which are subsequent to Gonzales in this case, with respect to the due process issue, which has been alluded to but was not addressed by plaintiff's counsel in his argument in chief. And so I won't go into that unless the court wishes me to. But in any event, Kemp said that Gonzales is inapplicable where the class representative and the class receive the same relief. And that's a distinction in one of the other cases where the class leader, class representative received something different. Here, they all got the same amount under the same formula. And even after the California State Court had subsequent proceedings, it again determined there was no basis to upset the judgment, and that all had been treated equally, that it had dealt with what it referred to as a delusion problem, and the judgment would stand. That's the determination of the California Trial Court after itself expressing some skepticism in an ex parte proceeding with respect to what had occurred with respect to ILG. And so it completely and fully examined this issue. And the only basis for this court to look at it is to determine, to look at whether due process was accorded. And due process was accorded here in notice, in opportunity to be heard, no objections, same remedy for the class representative, same remedy for the class as a whole. Consequently, I would urge the court to effectively sustain Judge Miller, whose opinion is thorough, who analyzed all of the cases, and who determined that there was no basis for finding that due process was not accorded. The same decision that had been made by the trial court, by the way. If the court has questions, I'm happy to answer them, but. Thank you, Mr. Porter. Thank you. Mr. Ward, you saved time for another one. Thank you, Your Honors. I'd like to start by talking, you know, Judge Smith asked with regard to the Matsushita case and asked Mr. Porter, the FLSA claims could have been brought in the California suit. And we acknowledge they could have been brought. But the question in Matsushita was not about, it's not about who can bring the claims. The question here is not really whether it was possible to bring the claims. We think it was possible if the right procedures that Congress has specified were followed in that case. So there's a difference between who. In Matsushita, on which Mr. Porter relies, the issue there was whether there was, there, it was no issue. There was exclusive Federal jurisdiction on certain claims. So that's the reason why certain claims couldn't be brought in the State case. Here the question is, can Dawn Loftin, the one and only named plaintiff in the Loftin case, can she bind these thousands of other people as to their FLSA claims or as to signatories to a contractual release? And we believe that under 216, that cannot be done. Congress's, Congress's purpose in enacting Section 216 was twofold. One was actually to free employers from the burden of these representative suits. And so it's, there's a little bit of irony in an employer arguing for being able to resolve these things on a representative basis. And two was, though, to ensure the individual employee's right to control his or her own claim. And both of those policies are being contravened if we allow settlements like Loftin to preclude them. The particular problem that Congress was trying to address was unions bringing these suits on behalf of employees with maybe little or no consent on behalf of the employees. And so that's why Congress is adamant in 216, the one thing you can't do in an FLSA action, and Section 216, by the way, is the exclusive means for a private party, for someone other than the Secretary of Labor to bring, you know, to pursue FLSA actions. So to the extent Wells Fargo has said, well, you know, Loftin wasn't an FLSA action, well, okay, that's true. It wasn't. But if you're going to bring FLSA claims and resolve FLSA claims in a court, it needs to be in an FLSA action under Section 216. But, you know, 216 says no representative suit is allowed. An employee can bring a suit on behalf of himself and others similarly situated as long as those others become party plaintiffs by filing written consent in court. Mr. Porter asked us to look at the release language in the class notice. And so Judge Costa pointed out that the release language has language, I'd say it a little less forcefully with respect, Your Honor. I don't think the release language has language clearly releasing FLSA claims. I think it is broad and I think could be read to include the FLSA claims. But as far as, in particular, as far as notifying a layperson getting this in the mail and it's not clear if that's like a separate thing or if it's wage orders under the FLSA or wage orders and any of that, but it also says — But it's already said all State and Federal. But then it also says, Your Honor, notwithstanding the foregoing, nothing in this releases anything that cannot be released as a matter of law. So we would argue that if you can't, as a matter of law, join the FLSA action without opting in, you can't release it through that. And there are many problems, as he alluded to, due process issues also with the Lofton proceedings. And my time is up, so. Thank you, Mr. Moore. Your case and all of today's cases are under submission.